*746 ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Roxanne D. Andrus, a disbarred attorney.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
Two sets of formal charges were filed against respondent by the ODC. The first, bearing the disciplinary board’s docket number 02-DB-009, was filed on January 28, 2002 and encompasses fourteen counts of misconduct. The second set of formal charges, 02-DB-071, was filed on July 19, 2002 and encompasses two counts of misconduct. The two sets of formal charges were considered by separate hearing committees, then consolidated by order of the disciplinary board on March 25, 2003. On February 11, 2004, the disciplinary board filed in this court a single recommendation of discipline encompassing both matters involving respondent.

\z02~DB-009

Counts I and II — The Kelly Matter
In April 1999, Virginia Kelly retained respondent to represent her in a child custody case. Ms. Kelly paid respondent $750 in connection with the matter. Respondent neglected the matter, failed to communicate with her client, and failed to refund the unearned portion of the legal fee she was paid. Respondent also failed to cooperate with the ODC in its investigation of Ms. Kelly’s complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 3.2 (failure to make reasonable efforts to expedite litigation), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Counts III and IV — The Thibeaux Matter
In June 1998, Francis Thibeaux retained respondent to represent him in a personal injury matter. Respondent neglected the matter and failed to communicate with her client. Respondent also failed to cooperate with the ODC in its investigation of Mr. Thibeaux’s complaint.
*747 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,3.2, 8.1(c), and 8.4(g).
Counts v. and VI — The Mason Matter
In June 2000, Charles and Ethel Mason retained respondent to prepare a Power of Attorney and either an Act of Sale or an Act of Donation of property to them from | sMrs. Mason’s parents. Respondent neglected the matter and failed to communicate with her clients, and ultimately both of Mrs. Mason’s parents died before Mr. and Mrs. Mason were able to secure the transfer of the property at issue. Furthermore, respondent failed to cooperate with the ODC in its investigation of Mr. and Mrs. Mason’s complaint.
The ODC alleged respondent’s condúct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,3.2, 8.1(c), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(g).
Counts.VII and VIII— The Espree Matter ■
In August 2000, Leonard Glenn Espree retained respondent to represent him in a criminal case in which he was charged with issuing worthless checks. Mr. Espree gave respondent $4,834.81 that was intended for reimbursement of the victims, but respondent failed to remit these funds to the District Attorney’s Office and instead converted the funds to her own use. Respondent also neglected Mr. Espree’s criminal case and failed to communicate with her client. Furthermore, respondent failed to cooperate with the ODC in its investigation of Mr. Espree’s complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15 (safekeeping property of clients or third persons), 3.2, 8.1(c), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation),. 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g).
14Counts IX and X — The Batiste Matter
Noel Batiste, Jr. retained respondent to represent him in a personal injury matter arising out of a rear-end collision that occurred in November 1998. After filing suit in the matter, respondent settled the personal injury case for $2,000. Mr. Batiste was unaware that respondent had filed the lawsuit, and respondent did not obtain Mr. Batiste’s consent to the settlement. After receiving the settlement check and related documents from the defendant insurer in February 2000, respondent prevailed upon Mr. Batiste to endorse the check. Mr. Batiste did so, and thereafter respondent informed him that he would receive $500 from the settlement after deductions were made for medical expenses and attorney’s fees. Mr. Batiste believed this amount was inadequate and told, respondent to reject the settlement and return the funds to the insurer. Notwithstanding Mr. Batiste’s instructions, respondent sent the executed settlement documents (including a judgment of dismissal in the personal injury case) to the insurer and negotiated the settlement check; however, Mr. Batiste received no funds from the settlement. Furthermore, respondent failed to cooperate with the ODC in its investigation of Mr. Batiste’s complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15, 3.2, 8.1(c), 8.4(a), 8.4(b), 8.4(d), and 8.4(g).
Counts XI and XII — The Benjamin Matter
In January 2000, Sherry Benjamin retained respondent to handle a criminal *748 case pending against her brother, Issac Julian, Jr., in the United States District Court for the Western District of Louisiana. Ms. Benjamin paid respondent $2,500 in connection with the matter. Respondent neglected the matter, failed to communicate with her | sclient, and failed to enroll as counsel or to appear in court on Mr. Julian’s behalf. Following a hearing in February 2001, United States District Judge Rebecca Doherty ordered respondent to refund the legal fee Ms. Benjamin paid; however, respondent failed to do so. Respondent also failed to cooperate with the ODC in its investigation of Ms. Benjamin’s complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5,1.15, 8.1(c), 8.4(a), and 8.4(g).
Counts XIII and XIV — The Chaisson Matter
Mary Elsie Chaisson retained respondent to handle a criminal case for her husband, and later, a child custody case for her son. Respondent neglected the matters, failed to communicate with her clients, and failed to refund the unearned portion of the legal fee she was paid. Respondent also failed to cooperate with the ODC in its investigation of Mrs. Chaisson’s complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.5, 3.2, 8.1(c), 8.4(a), and 8.4(g).

02-DB-071

Counts I and II — The West Matter
In February 2002, the ODC received a complaint against respondent from Linda Simar, the director of Kingsley Place, an assisted living facility in Lafayette. Ms. Simar reported that Margaret West, a 92-year old resident of Kingsley Place, gave respondent a power of attorney to assist in handling her financial affairs, but thereafter respondent issued checks for payment of Mrs. West’s monthly lease at Kingsley Place | (¡that were returned for insufficient funds.[2] Ms. Simar stated that respondent was aware that the checks had been returned and that Mrs. West’s account with Kingsley Place had gone past due, but that respondent had done nothing to remedy the situation.
Respondent failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Simar, and she failed to comply with several requests from Mrs. West that she provide an accounting. Nevertheless, with the assistance of the Elderly Protective Services of the St. Martin Parish Sheriffs Office, the ODC learned that Mrs. West granted a power of attorney to respondent in August 2000.[3] Mrs. West paid her own expenses until June 2001, at which time respondent and Mrs. West opened a joint checking account at Bank One. From that point, respondent began converting Mrs. West’s funds to her own use.[4] Respondent also used one of Mrs. *749 West’s credit cards for her own purposes,[5] and unbeknownst to Mrs. West, she 17applied for and received two new credit cards using Mrs. West’s name and social security number.[6]
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.15, 8.4(a), 8.4(b), 8.4(c), and 8.4(g).
DISCIPLINARY PROCEEDINGS
Respondent was personally served with both sets of formal charges. She failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration in either matter.

Hearing Committee Recommendations 02-DB-009

Based on the facts that were deemed admitted, the hearing committee found respondent violated the Rules of Professional Conduct as charged in the formal charges.[7] The committee determined that respondent violated duties owed to her clients by failing to act with reasonable diligence and promptness in her various representations, often resulting in severe, if not irreparable, harm to those clients. She continually failed to keep her clients reasonably informed about the status of their Leases and failed to comply with their reasonable requests for information. Even now, respondent has not provided an accounting of client funds, nor refunded unearned fees, in one instance in defiance of a court order. She cavalierly ignored her duty to cooperate in the disciplinary investigation of all the underlying complaints. The committee concluded respondent’s conduct was intentional. Considering the ABA’s Standards for Imposing Lawyer Sanctions, and the prior jurisprudence of this court dealing with similar misconduct, the *750 committee determined the baseline sanction in this matter is disbarment.
As aggravating factors, the committee recognized respondent’s disbarment in An-drus I, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The committee found there are no mitigating factors present.
Under all the circumstances, the committee felt respondent’s misconduct was serious enough to warrant consideration of permanent disbarment. Alternatively, considering that some of the misconduct at issue here occurred during the same time frame as the misconduct at issue in An-drus 7,[8] the committee recommended that the additional violations be added to her record for consideration in the event she applies for readmission after becoming eligible to do so. See Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991). The committee also recommended that respondent be ordered to make full restitution to her former clients.
1 cPZ-DB-011
Based on the facts that were deemed admitted, the hearing committee found respondent violated the Rules of Professional Conduct as charged in the formal charges.[9] The committee noted the seriousness of respondent’s conduct in converting Mrs. West’s funds to her own use and paying her own personal bills on credit cards that she acquired in Mrs. West’s name. She has failed to make any restitution whatsoever for these funds. There is no question that respondent has demonstrated her lack of any regard whatsoever for the interests of her client by failing to acknowledge these complaints and by continuing to make charges and convert funds belonging to Mrs. West, even when she was aware that she was being investigated by Elderly Protective Services concerning her use of the credit cards and the funds belonging to Mrs. West. In addition, respondent has knowingly and intentionally failed to cooperate with the ODC. Considering these circumstances, the committee recommended that respondent be permanently disbarred.
On October 10, 2003, after both hearing committees had submitted their recommendations to the disciplinary board, respondent filed a “Response for Consideration,” asserting that her failure to cooperate in these proceedings stemmed from an unspecified medical condition that resulted in the loss of her breasts. Respondent urged that she not be permanently disbarred.

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board agreed that respondent violated the Rules of Professional Conduct as charged in both sets of formal charges. The board found that respondent violated duties owed to her clients, |inthe public, the legal system, and the profession. Her conduct was intentional and caused substantial injury. Respondent has converted or mishandled property belonging to Mrs. West, Mr. Es-pree, and Mr. Batiste. She has neglected the legal matters of each client who filed a complaint against her, causing delays in their legal matters, and in some instances, putting their legal rights at risk. Respon *751 dent’s repeated failure to cooperate with the ODC has caused unnecessary depletion of the agency’s resources in that additional investigative efforts had to be pursued. The board concluded the appropriate baseline sanction for respondent’s misconduct is disbarment.
As aggravating factors, the board recognized respondent’s prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The board found that the mitigating factor of personal problems is present, and recognized that during some of the time period at issue, respondent suffered from serious medical problems. However, the board determined that while respondent’s medical problems may mitigate the severity of some of her misconduct involving neglect of legal matters and failure to communicate with clients for a short period of time, the medical problems do not excuse her misconduct involving the improper handling of client funds, her chronic neglect of her clients’ legal matters, and her repeated failure to cooperate with the ODC.
The board then turned to a discussion of the sanction of permanent disbarment. Respondent’s conduct fits within Guideline 1 of the permanent disbarment guidelines, which provides for permanent disbarment when an attorney engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” InHere, respondent converted funds from and made unauthorized credit card charges to Mrs. West, a 92-year old nursing home resident.[10] Respondent also converted the $4,834.81 Mr. Espree gave her to cover his NSF checks and converted Mr. Batiste’s $2,000 personal injury settlement.
The board acknowledged the concern expressed by the hearing committee in 02-DB-009 to the effect that much of the misconduct at issue in this matter occurred during the same time period as Andrus I. However, the board pointed out that numerous instances of serious misconduct occurred in 2001 and 2002, after the misconduct in Andrus I ended. Therefore, the board concluded that the Chatelain rule is not controlling here, and accordingly, recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to make restitution to her victims and that she be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
The record overwhelmingly supports a finding of professional misconduct that is of the most serious nature. Respondent has engaged in a chronic pattern of accepting legal representations when she had no apparent intention of rendering services or communicating with her clients in the future. She has refused to refund unearned legal fees and has failed to cooperate with the ODC in eight separate | ^disciplinary investigations. Her intentional actions have resulted in serious *752 harm to her clients, the most egregious example of which is the West matter, in which respondent exploited the power of attorney granted her by an elderly client, Mrs. West, as a means to finance what can only be described as a personal “shopping spree.” Respondent has never accounted to her client for the funds under her control during the .time the power of attorney was in effect, nor has she ever paid any restitution to her client for the funds she converted.
In determining the appropriate sanction for respondent’s misconduct, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct clearly violated duties owed to her clients, the public, the legal system, and the profession. Unquestionably, the baseline sanction for such misconduct is disbarment. Numerous aggravating factors are present, including prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. We are unable to discern any mitigating factors from the record.[11]
Having found disbarment is the appropriate sanction, the sole remaining issue presented for our consideration is whether respondent’s conduct is so egregious that | isshe should be permanently prohibited from seeking readmission to the practice of law.[12]
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. Guideline 1 applies to “repeated or multiple instances of intentional conversion of client funds with substantial harm.” Respondent’s reprehensible conduct in handling Mrs. West’s affairs clearly falls within the scope of this guideline.
The nature of the misconduct subject of the instant proceedings, coupled with respondent’s demonstrated indifference for the welfare of her clients, convincingly establishes that she does not possess the moral fitness to practice law and that she poses a threat of danger to the public in the event she is permitted to resume practicing law. Respondent has disregarded and ignored her obligation to uphold the high standards of honesty and righteousness that she assumed when she took the oath as a member of the bar of this state. *753 Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). She has used her law license not to foster the high standards of the profession, hut to exploit her clients for her own benefit. This court cannot and will not tolerate such conduct. Without question, respondent must be permanently disbarred.
| ^Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Roxanne Denise Andrus be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to provide complete accountings and full restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent was disbarred in 2002 for serious professional misconduct that included neglect of legal matters, failure to communicate with clients, failure to account for or refund unearned legal fees, failure to properly safeguard client and third-party funds, and failure to cooperate with the ODC in its investigation. In re: Andrus, 02-0279 (La.4/19/02), 814 So.2d 1283 ("Andrus I").

. Two checks drawn on Mrs. West’s barde account and payable to Kingsley Place were returned for insufficient funds: one dated December 12, 2001 in the amount of $1,671, and a second dated February 15, 2002 in the amount of $4,000. Though both checks are signed "Margaret H. West,” the handwriting appears to be respondent's.

. Mrs. West revoked the power of attorney in March 2002.

.Wendy Breath, an Elderly Protective Services casemanager for the St. Martin Parish Sheriff's Office, obtained copies of the bank statements for the joint checking account covering the period June 12, 2001 (the date the account was opened) through April 9, 2002. These statements do not reflect the payees of the numerous checks written on the account, but according to Ms. Breath, the spending "far exceeds Mrs. West's expenses.” Further *749 more, the statements reflect that deposits totaling $40,613.50 were made to the account during the first month it was open, but by November 27, 2001, the account was overdrawn. In all, the statements reflect no less than twenty occasions on which the bank charged a fee due to insufficient funds in the account.

.Ms. Breath obtained copies of the statements for Mrs. West’s Chase Gold MasterCard covering the period July 6, 2001 through April 4, 2002. Although this card was issued to Mrs. West prior to her involvement with respondent, Ms. Breath stated that Mrs. West “never had more than about $500 worth of charges on the card.” The statements reflect numerous cash advances and late fee and returned check charges, as well as charges that are not likely attributable to a 92-year old resident of an assisted living facility, including charges from Saks Fifth Avenue, Gap Kids, the Disney Store, Kate Spade, the Windsor Court Hotel, the Ritz Carlton Hotel, Mr. B's Bistro, and Pat O’Brien's. At one point, the balance on Mrs. West's Chase credit card exceeded $13,000. There is no information in the record concerning the charges billed to the two new credit cards that respondent requested in Mrs. West's name.

. In May 2002, Mrs. West filed a police report against respondent with the Lafayette Police Department for the crime of financial exploitation of the infirm, a violation of La. R.S. 14:93.4. There is no information in the record concerning the status of the criminal complaint.

. The committee did not find that respondent violated Rule 8.4(a) in connection with Count VI, the Mason matter, or Count XIII, the Chaisson matter, but that appears to be a mere oversight.

. The misconduct at issue in Andrus I occurred between 1996 and 2000, while the misconduct in 02-DB-009 commenced in 1998 and continued into the summer of 2001.

. Though not charged in the formal charges, the committee also found that respondent violated Supreme Court Rule XIX, §§ 9(a) and 9(c).

. The board noted that it is impossible to determine the exact amount of the conversion from the documents submitted by the ODC, but estimated that respondent converted and/or misused more than $47,618. The amount charged to the two credit cards that respondent improperly requested and received in Mrs. West's name is unknown.

. Like the disciplinary board, we do not believe that respondent’s medical problems mitigate the seriousness of the intentional misconduct in which she engaged.

. At first glance, it might appear the Chate-lain approach is applicable to this case, as some of the misconduct at issue occurred during the same time frame as the misconduct in Andrus I. While we agree there is some overlap between Andrus I (1996-2000) and the two consolidated matters here (1998-2001 and 2001-2002), that fact is of no moment when numerous instances of very serious misconduct occurred after the misconduct found in Andrus I ended.